[Cite as *Whited v. Whited*, 2020-Ohio-5067.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

MICHAEL W. WHITED,                    :

    Plaintiff-Appellant,              :     Case No.   19CA26

    vs.                               :

DONNA L. WHITED,                       :     DECISION AND JUDGMENT ENTRY

    Defendant-Appellee.               :

_____

APPEARANCES:

William B. Summers, Parkersburg, West Virginia, for Appellant.[1]

Andrew S. Webster, Belpre, Ohio, for Appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT, GENERAL DIVISION
DATE JOURNALIZED: 10-19-20
ABELE, J.

{¶ 1} This is an appeal from a Washington County Common Pleas Court denial of a Civ.R. 60(B) motion for relief from judgment filed by Michael W. Whited, plaintiff below and appellant herein.   Appellant assigns two errors for review:

    FIRST ASSIGNMENT OF ERROR:

    "THE LOWER COURT ERRED IN ITS DETERMINATION
    THAT THE RULE 60(B) FROM THE NOVEMBER 15, 2019
    MAGISTRATE'S DECISION, AND SUBSEQUENT
    RATIFICATION ON THE SAME DAY DO NOT APPLY

_____

[1]   Different counsel represented appellant during the trial court proceedings.

BECAUSE RULE 60(B)(5)'S LANGUAGE STATE [SIC] THAT IT MAY BE BROUGHT AT ANY TIME, AND WHEN THE NEW PROCEEDING HEREIN IS BASED ON THE SAME CASE NUMBER, SAME FACTS, AND SAME ORDER FROM THE ORIGINAL FILING, AND THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO HOLD A HEARING ON THE MOTION BASED ON THE OPERATIVE FACTS ALLEGED BY THE PLAINTIFF[2]."

SECOND ASSIGNMENT OF ERROR:

"THE LOWER COURT ERRED IN DENYING THE RULE 60(B) BASED ON THE APPELLANT'S NEW FACTUAL ALLEGATIONS FROM 2003 WHEN THE APPELLEE'S MOTION RELATES BACK TO THE ORIGINAL ORDER AND IS IN THE SAME CASE WITHOUT CONSIDERING ANY NEW DEVELOPMENTS AS TO IF THE ORDER IS STILL VALID OR JUST IN LIGHT OF THOSE ALLEGATIONS, AS THIS WOULD ENTITLED [SIC] THE APPELLANT TO RELIEF UNDER RULE 60(B)(1),(2),(3), OR (4) AS THE NEW PROCEEDING HAS BEEN BROUGHT WITHIN ONE YEAR, AND IS NO LONGER EQUITABLE GIVEN THE CIRCUMSTANCES."

{¶ 2} Appellant and Donna Whited, defendant below and appellee herein, married in 1974 and have three children. On December 10, 1999, the trial court issued a judgment that terminated the parties' marriage and approved their Separation Agreement, which included, inter alia, a provision that "[e]ach party shall get 50% of the General Electric Pension by means of a QDRO between the parties."

{¶ 3} On July 31, 2003, appellant filed a motion to modify parental rights and responsibilities and sought to be designated residential parent of their minor child because appellee had "confessed to having sexual intercourse with the parties' [then emancipated] son,

---

[2] We observe that appellant's brief does not comply with Appellate Rule 16(2): "The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * (2) A table of cases alphabetically arranged, statutes, and other authorities cited, with references to the pages of the brief where cited."

[W],[3] beginning when the child was twelve and has recently threatened to kill [W's] girlfriend and her family along with killing their son [W]. The Mother is currently hospitalized in the Athens Mental Health Facility." The trial court designated appellant as W's residential parent and legal custodian, effective July 31, 2003.

{¶ 4} On June 2, 2019, appellee filed a motion to implement the division of appellant's retirement benefits. Appellee pointed out that the December 10, 1999 decree required the division of appellant's General Electric retirement benefits from his date of employment to December 10, 1999. Appellee further stated that, since the filing of the decree, no action has been taken to implement the court's order. Thus, appellee sought an order: (1) to prohibit appellant from taking any action to jeopardize appellee's interest in appellant's retirement benefits, and (2) to require appellant to cooperate with appellee to divide the retirement benefits per the court's prior entry.

{¶ 5} On August 2, 2019, the magistrate ordered the parties to cooperate in the issuance of a Qualified Domestic Relations Order (QDRO) in order to effectuate the retirement benefits provision. On August 15, 2019, the magistrate determined that the QDRO covered the retirement benefit period from October 14, 1974 to August 25, 1999, and that the QDRO be filed within thirty days.

{¶ 6} On October 21, 2019, appellant filed a motion, pursuant to Civ.R. 60(B)(2),(3), and (5), and requested a hearing on the issue of whether newly discovered evidence, fraud, misconduct, misrepresentation or any other reason should prevent the operation of the QDRO.

---

[3] In this opinion we substitute "W" for the name of the parties' son.

On November 4, 2019, appellant requested a stay of the QDRO's enforcement in light of his pending Civ.R. 60(B) motion. On November 15, 2019, the trial court overruled appellant's objection to the QDRO and denied his Civ.R. 60(B) motion. This appeal followed.

I.

{¶ 7} For ease of discussion, we address appellant's assignments of error in reverse order. In his second assignment of error, appellant asserts that "[t]he lower court erred in denying the Rule 60(B) based on the Appellant's new factual allegations from 2003 when the Appellee's Motion relates back to the original Order and is in the same case without considering any new developments as to if the Order is still valid or just in light of those allegations, as this would entitled [sic] the Appellant to relief under Rule 60(B)(1), (2), (3), or (4), as the new proceeding has been brought within one year, and is no longer equitable given the circumstances."[4]

{¶ 8} Generally, Civ.R. 60(B) strikes a balance between the need for final judgments and the need for courts to vacate their orders to further justice and fairness. *Doddridge v. Fitzpatrick*, 53 Ohio St.2d 9, 12, 371 N.E.2d 214 (1978). "'In an appeal from a Civ.R. 60(B) determination, a reviewing court must determine whether the trial court abused its discretion.'" *Harris v. Anderson*, 109 Ohio St.3d 101, 2006-Ohio-1934, 846 N.E.2d 43, ¶ 7, quoting *State ex rel. Russo v. Deters,* 80 Ohio St.3d 152, 153, 684 N.E.2d 1237 (1997); *Britton v. Britton*, 4th

---

[4] As a procedural matter, we observe that appellant filed his motion under Civ.R. 60(B)(2), (3), and (5). A general principle of appellate jurisdiction is that a party may not present an argument on appeal that it failed to raise in the trial court. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997); see also *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1960), paragraph one of the syllabus ("It is a general rule that an appellate court will not consider any error which counsel * * * could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court"); accord *State v. Wintermeyer,* 158 Ohio St. 3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10. Therefore, we do not address arguments concerning Civ.R. 60(1) or (4) because they are not properly before this court.

Dist. Washington No. 18CA10, 2019-Ohio-2179, ¶ 23.   Under this highly deferential standard,

an appellate court's review is limited to determining whether the trial court acted unreasonably,

arbitrarily, or unconscionably; in doing so, the appellate court may not simply substitute its

judgment for that of the trial court.   *See Dunford v. Dunford*, 4th Dist. Gallia No. 13CA7,

2014-Ohio-617, ¶ 3, citing *Young v. Young*, 4th Dist. Lawrence No. 11CA19, 2012-Ohio-3480,

¶ 7.

{¶ 9} Civ.R. 60(B) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.   The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.   A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules.

{¶ 10} To prevail on a Civ.R. 60(B) motion, a movant must demonstrate: (1) a

meritorious defense or claim to present if relief is granted; (2) entitlement to relief under one of

the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable

time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after

the judgment, order or proceeding was entered or taken.   *Bank of Am., N.A., Kuchta,* 141 Ohio

St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1030, ¶ 10-11, citing *GTE Automatic Elec. Inc. v. ARC*

*Industries, Inc.,* 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. "These requirements are independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met." *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994); *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988). We also note that "[r]elief from a final judgment should not be granted unless the party seeking such relief makes at least a *prima facie* showing that the ends of justice will be better served by setting the judgment aside." *Rose, supra*, at 21. Additionally, a court is not required to conduct a hearing on a Civ.R. 60(B) motion for relief from judgment unless the movant has supplied the court with operative facts that warrant relief from the judgment. *McFall v. McFall*, 9th Dist. No. 26418, 2013-Ohio-2320.

{¶ 11} In the case sub judice, appellant asserts that appellee's criminal conduct occurred, unbeknownst to him, during their marriage. Appellant contends that after he discovered this conduct in 2003, he could not file a Civ.R. 60(B)(1), (2), or (3) motion because the case had been closed and no actual enforceable judgment existed against him. Thus, appellant argues, the event from which we should measure timeliness is the 2019 QDRO. Furthermore, appellant does not set forth specific evidence of grounds for relief under Civ.R.60(2) and (3), but instead argues that based on "new evidence being brought after the new proceeding has started * * * a new proceeding based on the same order should hear the new developments on the case when this is the same case."

{¶ 12} As we indicated above, Civ.R. 60(B) provides: "The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken." Once again, appellant contends that he had no

"judgment" from which to seek relief until the trial court's January 3, 2019 QDRO.   Therefore, appellant argues that his motion is timely because a "new proceeding" exists based on the same case number, facts, and order from 1999.

{¶ 13} The trial court, however, reasoned that appellant learned  in 2003 of the "repulsive, immoral and criminal actions of the Defendant having perpetrated severe physical abuse of the parties' minor child and subsequently being convicted of the same."   Civ.R. 60(B) requires a motion filed under (1),(2), or (3) to be filed within one year of the original judgment. Appellant, however, filed his motion for relief from judgment twenty years after the original 1999 judgment and sixteen years after he learned of appellee's criminal conduct.   Civ.R. 60(2) and (3) speak to newly discovered evidence and fraud, and impose a one-year limitation from the date of the judgment to raise these issues.   *Strack*, *supra*.

{¶ 14} We also disagree with appellant's contention that the ODRO constitutes a "new proceeding" and constitutes a "final judgment."   "[A] QDRO is different from the usual court order.   A QDRO is an order that 'creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.'"   *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214, ¶ 18, citing Employee Retirement Income Security Act of 1974, Section 1056(d)(3)(B)(i)(l), Title 29, U.S. Code, and Section 414(p)(1)(A)(i), Title 26, U.S. Code.   "The QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution."   *Blaine v. Blaine,* 4th Dist. Jackson No. 10CA15, 2011-Ohio-1654, at ¶ 20, citing *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 7.   A QDRO "does not in any way constitute a further adjudication on the merits of

the pension division, as its sole purpose is to implement the terms of the divorce decree. Therefore, it is the decree of divorce that constitutes the final determination of the court and determines the merits of the case." *Wilson*, at ¶ 16. For example, in a Fifth District case, the court held that the date of a QDRO journal entry was not relevant in determining whether the motion was timely. *Plant v. Plant*, 5th Dist. Fairfield No. 02CA01, 2002-Ohio-3684, * 2. The court determined that the QDRO is not a judgment, but rather an implementation of a judgment. Thus, the court held that the husband "cannot utilize a Civ.R. 60(B)(2) or (3) motion, albeit filed within one year of the QDRO," when in fact, he is collaterally attacking the prior judgment entry/decree of divorce. *Id.*, at 2. We agree, and conclude that the date of the QDRO in the case at bar is not relevant in determining whether the Civ.R. 60(B) motion was timely.

{¶ 15} Civ.R. 60(B) provides a litigant with a vehicle to reopen a final judgment as only final judgments are subject to motions for relief from judgment. *Andy Estates Dev. Corp v. Bridal*, 68 Ohio App.3d 455, 588 N.E.2d 978 (10th Dist. 1991). Historically, a judgment is defined as a final determination of the rights and parties in an action. *See also* Civ.R. 54(A). Therefore, we agree with the trial court that appellant's Civ.R.60(B)(2) and (3) motion was untimely. Instead, a substantial lapse of time between a judgment and a motion for relief from judgment is contemplated under Civ.R. 60(B)(4) and (5) (e.g. see appellant's other assignment of error).

{¶ 16} Consequently, under the circumstances present in the case sub judice, we cannot say that the trial court's decision was unreasonable, arbitrary or unconscionable and constitutes an abuse of discretion. Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

II.

{¶ 17} In his first assignment of error, appellant asserts that "the lower court erred in its determination that the Rule 60(B) from the November 15, 2019 Magistrate's Decision, and subsequent ratification on the same day do not apply because Rule 60(B)(5)'s language state [sic.] that it may be brought at any time, and when the new proceeding herein is based on the same case number, same facts, and same Order from the original filing; and the trial court abused its discretion in refusing to hold a hearing on the Motion based on the operative facts alleged by the plaintiff.[5]"

{¶ 18} Appellant correctly contends that a Civ.R. 60(B)(5) motion need not be filed within one year of the trial court's 1999 judgment. Although appellant's statement is accurate, Civ.R. 60(B) does not state that a motion can be filed "at any time," as appellant asserts in his assignment of error. Instead, the rule states that a Civ.R. 60(B)(5) motion must be filed "within a reasonable time."

{¶ 19} Turning to the merits of appellant's Civ.R. 60(B)(5) claim, that provision allows "[a]ny other reason justifying relief from the judgment," and is a "catch-all provision which reflects the inherent power of a court to relieve a person from the unjust operation of a judgment. However, the grounds for invoking the provision must be substantial." *Volodkevich v. Volodkevich*, 35 Ohio St.3d 152, 154, 518 N.E.2d 1208 (1988), citing *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraphs one and two of the syllabus.

{¶ 20} Appellant points out that after the December 10, 1999 judgment: (1) neither party

---

[5] Although appellant only refers to Civ.R. 60(B)(5) in his first assignment of error, he includes Civ.R. 60(B)(4) references in the body of his brief. As indicated above, arguments not raised in the trial court are not properly before the court, and we do not address them.

filed a QDRO, and (2) appellee's ongoing crime victimized the parties' son.  Appellant argues that had he known about the criminal conduct, "the separation agreement would have been different, likely without the creation of a QDRO," and this, appellant reasons, entitles him to Civ.R. 60(B)(5) relief.

{¶ 21} In support of his argument, appellant cites *Taylor v. Haven*, 91 Ohio App.3d 846, 852, 633 N.E.2d 1197 (12th Dist.1993).  In *Taylor,* a putative father filed a Civ.R. 60(B)(5) motion for relief from judgment.  The court found that, although Haven had a meritorious claim, to prevail under Civ.R.60(B)(5) he had to: (1) demonstrate that he did not use that provision in place of a more specific provision of Civ.R.60(B), and (2) show that he filed his motion within a reasonable time.  Citing other court decisions that granted Civ.R. 60(B)(5) motions even after "a relatively long time," the Twelfth District concluded that, although Haven could have filed his motion under Civ.R. 60(B)(2) or (3), both of which must be filed within one year of the original judgment, "[w]e are not prepared to hold that a twelve-year interval between a final judgment and a movant's Civ.R. 60(B) motion is *per se* unreasonable."  *Id.* at 852.  Rather, the court held that "[a] trial court should consider factors beyond the absolute length of time before the movant files a Civ.R. 60(B) motion.  One such factor is the burden on the nonmoving party of asserting its claim after relief has been granted.  Another consideration is the movant's degree of fault in not bringing the motion sooner."  *Id.*

{¶ 22} In the case sub judice, although we may agree that the length of time between a judgment and a Civ.R. 60(B)(5) motion should not, standing alone, be the sole controlling factor, we also believe that *Taylor* is distinguishable.  Here, appellant could have filed his motion in 2003, or shortly thereafter, when he first learned of appellant's criminal conduct.  Instead,

appellant waited a very long time, some sixteen years, to do so. A more timely request could have provided the trial court with an opportunity to re-consider the parties' respective financial positions, retirement consequences and, if necessary, modify the retirement benefit provision.

{¶ 23} Appellant also cites *Holt v. Cline*, 5th Dist. No. CA-2905, 1992 WL 173368 (June 23, 1992), in support of his Civ.R. 60(B)(5) argument. In *Holt*, the parties never married and the court found Cline to be the children's father. Five years later, Cline filed a Civ.R. 60(B)(4) and (5) motion to vacate the paternity judgments and averred that he could not be the children's father because of his vasectomy five years before the paternity finding. After paternity tests excluded Cline as the biological father, the court granted his Civ.R. 60(B)(5) motion. The Fifth District affirmed and concluded that Cline's five-year delay to seek relief is not *per se* reasonable. *Id.* at 2. We, however, believe the *Holt* dissent more persuasive, especially in light of the facts present in the case at bar. The *Holt* dissent concluded that, because Cline knew at the time of the paternity judgment that his vasectomy rendered him incapable of being the children's biological father, Cline should have pursued his claim prior to the original judgment. We agree with this view. In the case at bar, appellant learned of appellee's criminal misconduct at a much earlier time and failed to act. Also, we recognize that a vast difference exists between a five-year delay and a sixteen-year delay.

{¶ 24} Appellant also cites a Second District case in which the parties married in 1988, had three daughters, and wife filed for divorce in the wake of sexual abuse accusations directed at her husband. *Albers v. Albers*, 2d Dist. Green No. 2012 CA 41, 2013-Ohio-2352. The physician-husband, convicted of sexual battery and gross sexual imposition, lost his license to practice medicine. *Id. at* ¶ 2. The court concluded that, although sexual battery and gross

sexual imposition are not defined as financial misconduct crimes, because financial consequences nevertheless spring from imprisonment and are readily apparent, husband's voluntary criminal acts may indeed constitute financial misconduct with respect to the allocation of marital assets. *Id.* at ¶ 15. The court observed that "[n]umerous courts have held that criminal conduct by one of the parties to a divorce can be considered in making an equitable distribution of marital assets, because of the financial ramifications that such conduct frequently creates for the spouse." *Id.* at ¶ 17. The court thus affirmed the trial court's finding that, for equitable reasons, wife was entitled to more than half of the marital assets. In the case sub judice, however, appellant did not actually allege that appellee's acts constituted financial misconduct, diminished the parties' assets or diminished appellee's asset contribution to the parties' marital property. Most important, appellant waited sixteen-years to raise this issue.

{¶ 25} Civ.R. 60(B)(5) "reflects the inherent power of the court to relieve a person from the unjust operation of a judgment, but the grounds for invoking it should be substantial." *Dunford v. Dunford,* 4th Dist. Gallia No. 13CA7, 2014-Ohio-617, ¶ 15, citing *PHH Mtge. Corp. v. Northrup*, 4th Dist. Pickaway No. 11CA6, 2011-Ohio-6814, ¶ 24, citing *State ex rel. Gyurcsik v. Angelotta*, 50 Ohio St.2d 345, 356, 364 N.E.2d 284 (1977), and *Caruso-Ciresi, supra,* at paragraph two of the syllabus. As we indicated above, however, Civ.R. 60(B)(5) is typically reserved for actions such as fraud upon the court. For example, "[p]ursuant to Civ.R. 60(B)(5), a court in appropriate circumstances may vacate a judgment vitiated by a fraud upon the court." *Coulson v. Coulson*, 5 Ohio St.3d 12, 448 N.E.2d 809 (1983), paragraph one of the syllabus. "Where an officer of the court, e.g., an attorney, actively participates in defrauding the court, then the court may entertain a Civ.R. 60(B)(5) motion for relief from judgment." *Id.* at 15. This

type of fraud is distinguishable from fraud committed by an adverse party under Civ.R. 60(B)(3), which is subject to the one-year time limit applied and Civ.R. 60(B)(1)-(3). *Dunford*, *supra,* at ¶ 16, citing *Still v. Still,* 4th Dist Gallia No. 95CA15, 1996 WL 362259 (June 25, 1996); 2 Klein, Darling, and Terez, 2 *Baldwin's Ohio Civil Practice*, Section 60:50 (2013).

{¶ 26} In *Dunford,* the movant filed her Civ.R. 60(B) motion five years after final judgment. This court concluded that the appellant raised a potentially viable claim of fraud on the court when she claimed that her ex-spouse's attorney threatened that she would be jailed if she did not sign the dissolution documents. *Dunford* at ¶ 19. We concluded that the trial court did not act in an unreasonable, arbitrary, or capricious manner when it determined that the appellant failed to raise her claim within a reasonable time. *Id*. at ¶ 21. In the case at bar, we recognize, like the trial court, that although appellee engaged in reprehensible actions, the issue appellant raises should have been raised at an earlier time. *See also Becker v. Becker*, 12th Dist. Butler Nos. CA98-02-031, CA98-02-036, 1999 WL 126068 (Feb. 22, 1999)(wife's Civ.R. 60(B) motion filed five years after the court entered the dissolution decree was untimely because she knew of the existence of the husband's pension, but did nothing to ascertain its value when the parties dissolved their marriage); *Rotroff v. Rotroff*, 6th Dist. Fulton No. F-06-019, 2007-Ohio-2391, ¶ 15 (Civ.R. 60(B)(5) motion filed seven years after trial court journalized divorce decree was untimely when appellant became aware that his military pension was improperly divided shortly after the judgment entry); *Tabor v. Tabor*, 7th Dist. Mahoning No. 02-CA-73, 2003-Ohio-1432, ¶ 24 (Civ.R. 60(B)motion filed almost fifteen years after divorce judgment was untimely); and *Jackson v. Hendrickson,* 2d Dist. Montgomery No. 21921, 2008-Ohio-491, ¶ 69, (Civ.R. 60(B)(5) motion filed thirteen years after the divorce decree was

untimely).

{¶ 27} A review of the record in the case sub judice reveals that the 1999 judgment terminated the parties' marriage and the Separation Agreement states that "[e]ach party shall get 50% of The General Electric Pension by means of a QDRO between the parties." Sixteen years after appellant learned of appellee's improper conduct, the magistrate addressed appellant's Civ.R. 60(B) motion and stated, "The allegations revolve around repulsive, immoral and criminal actions of the Defendant having perpetrated severe physical abuse of the parties' minor child and subsequently being convicted of the same. Actions that are alleged to have occurred during the marriage and after the marriage. These incidents purportedly came to light in 2003, approximately 4 years after the marriage was terminated by the Court Order. In the past 16 years since the incidents came to light, Plaintiff has failed to request this Court change its Order from 1999, until now." The decision further noted that R.C. 3105.171(C)(1) requires, "Except as provided in this Division or Division (E) of this section, the division of marital property shall be equal." The court noted that Division (E) does not permit an unequal distributive award of marital property due to morally perverse or criminal behavior of one spouse that does not rise to the level of financial malfeasance during the marriage. The decision further stated, "There are no factors raised in the Rule 60(B) Motion that would call for a distributive award at the time of the parties' divorce." As for appellant's objection to the entry of the QDRO, the magistrate found it "untimely and not appropriately before this Court. Res judicata would prohibit the Court from once again hearing an objection to the enforcement of an Order that was rendered in 1999."

{¶ 28} In the case sub judice, the trial court adopted the magistrate's decision and, after

our review, we find no abuse of discretion.   As the trial court observed, appellant seeks relief from the terms of the 1999 Separation Agreement.   Therefore, he must demonstrate that he filed his Civ.R. 60(B)(5) motion within a reasonable time.   The trial court finalized the judgment in 1999, appellant learned of appellee's misconduct in 2003, and appellant filed his motion for relief from judgment on October 21, 2019, not within a "reasonable time."    Here, we find no abuse of discretion.   The trial court's decision to deny Civ.R. 60(B)(5) relief is not unreasonable, arbitrary, or unconscionable.

{¶ 29} Of course, as with all abuse of discretion standard of review cases, it is conceivable that some members of this court or other courts may have viewed this matter differently had they been charged with making the initial determination.   Nevertheless, this deferential standard of review vests a trial court with broad discretion and may not be disturbed unless a court acts unreasonably, arbitrarily or unconscionably.   Here, based upon the facts and circumstances present in the case at bar, we conclude that the trial court did not act unreasonably, arbitrarily or unconscionably.   Instead, we believe that the trial court had a sound basis on which to deny appellant's request for relief from judgment.

{¶ 30} Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry these judgments into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.